IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CONSOLIDATION COAL COMPANY,

    Plaintiff,

v.                                    Civil Action No. 1:12CV70
                                                  (STAMP)
UNITED MINE WORKERS OF AMERICA
DISTRICT 31, LOCAL UNION 1702 and
UNITED MINE WORKERS OF AMERICA
INTERNATIONAL UNION,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**

I.   Procedural History

The plaintiff, Consolidation Coal Company ("CCC"), filed a motion to vacate an arbitration award with this Court. Defendant, United Mine Workers of America District 31, Local Union 1702 ("Local 1702"), then filed a motion to dismiss, or, in the alternative a motion for a more definite statement, arguing that the plaintiff's motion did not constitute a complaint that could initiate this action. The plaintiff then refiled the motion to vacate the arbitration award styling it as a complaint rather than a motion.

Thereafter, the parties filed a consent motion for leave to file a second amended complaint, adding an additional defendant, United Mine Workers of America International Union ("International Union"). This Court granted the parties' consent motion, and the

plaintiff filed its second amended complaint.  The defendants then jointly filed an answer to the second amended complaint asserting a counterclaim seeking the enforcement of the arbitration award and attorneys' fees.

Subsequently, pursuant to Federal Rule of Civil Procedure 26(f), the parties submitted a report outlining their discovery plan.  In their Rule 26(f) report, the parties indicated that they believed the action could be resolved on summary judgment, and therefore they did not need a trial date.  Accordingly, this Court provided the parties with a briefing schedule for their dispositive motions and withheld a trial date pending resolution of the dispositive motions.

Thereafter, the parties filed their dispositive motions.  Both the plaintiff's and the defendants' dispositive motions are fully briefed and ripe for disposition by this Court.  For the reasons set forth below, this Court grants the defendants' cross motion for summary judgment and denies the plaintiff's motion for summary judgment.

## II.  Facts

The parties to this action are signatories to the National Bituminous Coal Wage Agreement (hereinafter "CBA"), the collective bargaining agreement at issue in this dispute.  In 2010, the CCC contacted GMS Mine Repair & Maintenance ("GMS"), to remove, redesign, and replace the concrete floor in the bunker of

Blacksville No. 2 Mine, a mine owned and operated by CCC. As a result of this contract, defendant Local 1702 filed a grievance claiming that CCC violated the CBA by subcontracting certain bargaining unit work to GMS.

The grievance advanced to arbitration. The arbitrator held a hearing and thereafter issued an opinion finding that CCC violated the CBA by subcontracting the replacement of the concrete floor. The arbitrator retained jurisdiction in the event that the parties could not agree on the amount of damages owed to defendant Local 1702. Because the parties could not come to an agreement concerning the damages, the arbitrator held a second hearing and thereafter issued the award. This award took the total amount of hours that GMS employees worked on the floor and multiplied it by the CBA's hourly wage of $22.84, for a final award of $107,233.80. The arbitrator directed that this award be divided equally among the unit employees "who were available to work during the period of the subcontract work." ECF No. 15 Ex. 2 *3.

### III. Applicable Law

A. Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718-19 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(stating that summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into

the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B. Review of Arbitration Awards

Judicial review of arbitration awards is "among the narrowest known to the law." PPG Indus. v. Int'l Chem. Workers, 587 F.3d 648, 652 (4th Cir. 2009) (internal citations omitted). Federal courts presumptively favor the validity of arbitration awards. Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996). The parties to a collective bargaining agreement "bargained for the arbitrator's interpretation

and resolution of their dispute." Id. A reviewing court generally defers to the arbitrator's reasoning in a labor arbitration case and should never overturn an arbitrator's findings absent fraud by the parties or dishonesty by the arbitrator. Id. This Court determines whether the arbitrator did his job, "not whether he did it well, correctly, or reasonably, but simply whether he did it." Id. To determine whether the arbitrator did his job, this Court examines: "(1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits." Id.

Despite this narrow scope of review, arbitration awards may be overturned where the "award violates well-settled and prevailing public policy, fails to draw its essence from the collective bargaining agreement or reflects the arbitrator's own notions of right and wrong." Id. Therefore, an "arbitrator cannot 'ignore the plain language of the contract' to impose his 'own notions of industrial justice.'" PPG Indus., 587 F.3d at 652 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)). However, arbitrators need not provide any rationale for an award. Id. This Court will not refuse to enforce an award for "mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority." Id. (citing United Steelworkers of Am. v. Enter. Wheel & Car Corp.,

6

363 U.S. 593, 597 (1960)). Accordingly, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 484 U.S. at 38.

IV. Discussion

In CCC's motion for summary judgment, it argues that: (1) the arbitrator exceeded the scope of his authority by issuing an award of punitive damages; and (2) the Court may review and vacate arbitration awards that exceed the arbitrator's authority, notwithstanding a contract provision rendering arbitration 'final' or binding. In contrast, the defendants argue that: (1) it is the function of the arbitrator rather than the federal judiciary to resolve workplace disputes concerning the interpretation and application of the CBA; (2) by agreeing to the final and binding method of contractual dispute resolution without recourse to the courts, plaintiff has waived its right to challenge the award of the arbitrator in this Court; and (3) the defendants are entitled to attorneys' fees as a result of the plaintiff bringing this action.

A. Arbitration Award

First, this Court notes that the issue here is not whether the arbitrator's decision that plaintiff violated the CBA was proper. The issue in this action is whether the award accompanying such

7

decision was within the arbitrator's scope of authority to grant. As stated above, an arbitration award "may be overturned if the award violates well-settled and prevailing public policy, fails to draw its essence from the collective bargaining agreement or reflects the arbitrator's own notions of right and wrong." Mountaineer Gas, 76 F.3d at 608. The United States Court of Appeals for the Fourth Circuit has held that an award that is punitive in nature does not draw its essence from the CBA when the CBA does not provide for such an award. See Baltimore Regional Joint Bd. v. Webster Clothes, Inc., 596 F.2d 95 (4th Cir. 1979) ("The award of damages in the present case does not draw its essence from the bargaining agreement, for the agreement's essence does not contemplate punitive, but only compensatory awards."). Therefore, absent the CBA providing for such award and any willful or wanton conduct, an arbitrator may not make an award of punitive damages.

In order for this Court to consider the damages awarded in this action compensatory rather than punitive, "a party must have suffered some legally cognizable loss, be it manifestly monetary or measurable in monetary terms." Id. at 98. In this action, the arbitrator based his award of damages on the total amount of hours that the non-union GMS employees worked on removing, redesigning, and replacing the floor and multiplied it by the hourly wage provided for in the CBA, which a bargaining unit employee would

have earned had the employee been offered the opportunity to do such work. The arbitrator then stated that this amount was to be divided between those union employees "who were available to work during the period of the subcontract work and shall exclude any employees hired on or after the date on which the contractor completed its work." ECF No. 15 Ex. 2 *3. Thus, ensuring that those employees who could not accept the work opportunity would not benefit from the award.

The plaintiff likens the award at issue in this action to that at issue in <u>Webster Clothes</u>, arguing that the award at issue is punitive because all bargaining unit employees were performing other jobs at the time that the floor project was underway. Therefore, the plaintiff contends that no bargaining unit employee suffered any cognizable loss. However, there is no indication, like that found in <u>Webster Clothes</u>, that had the opportunity not been subcontracted to non-union employees that it would not have eventually been completed by union employees. <u>See</u> 596 F.2d at 97-98 (stating that even if the garments were not made at the different factory not covered by the CBA they still would not have been made at the Webster factory). The plaintiff does not state that the floor project could only be done at the time when all bargaining unit employees were performing other work, which would therefore require that the floor project be subcontracted or never

9

completed. Thus, this Court finds this argument of the plaintiff's unpersuasive.

Instead, this Court finds that the award was tied to a legally cognizable loss that is measurable in monetary terms. The bargaining unit employees lost a certain number of working hours due to the plaintiff subcontracting out work that based on the CBA, bargaining unit employees were to complete. The arbitrator fashioned an award based on those lost hours, multiplied those hours by the wage provided for in the CBA, and required the award be distributed to those employees who were able to work at the time the floor project was underway. This Court finds that it was within the scope of the arbitrator's authority to make such award. Thus, the award drew its essence from the CBA, as it was compensatory rather than punitive in nature.

B. <u>Attorneys' Fees</u>

In their counter-claim and again in their cross motion for summary judgment, the defendants request that this Court award them attorneys' fees. The defendants argue that the plaintiff challenges the merits of an arbitrator's award, and such a challenge is "presumptively unjustified." Therefore, the defendants are entitled to attorneys' fees. In reviewing the defendants' claim, however, the measure for a case such as this, where the challenge relates to "whether an arbitration award 'draws its essence' from the contract," is "the relatively lenient one of

whether [the challenge] has any arguable basis in law." Capitol Cement Corp. v. Cement, Lime, Gypsum, & Allied Workers' Div. Of Int'l Bhd. of Boilermakers, 17 F. Supp. 2d 564, 567 (N.D. W. Va. 1998) (quoting United Food & Commercial Workers, Local 400 v. Marval Poultry Co., Inc., 876 F.2d 346, 351 (4th Cir. 1989)). This Court finds that the plaintiff's challenge to whether the arbitration award draws its essence from the contract, while not prevailing, has an arguable basis in law. Therefore, the defendants' request for attorneys' fees is denied.

V. Conclusion

For the above-stated reasons, the defendants' cross motion for summary judgment (ECF No. 29) is GRANTED and the plaintiff's motion for summary judgment (ECF No. 30) is DENIED. It is ORDERED that the arbitration award be ENFORCED. The defendants' request for attorneys' fees is DENIED. It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:      September 4, 2013

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE